

**FILED**

**March 14, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 10:49 AM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **MARK WELCH,** | ) | **Docket No.: 2015-05-0340** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 39263-2015** |
| **FRITO-LAY, INC.,** | ) | |
| **Employer,** | ) | **Judge Dale Tipps** |
| **And** | ) | |
| **AGRI GEN. INS. CO.** | ) | |
| **Insurance Carrier/TPA.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

This matter came before the undersigned workers' compensation judge on March 3, 2016, on the Request for Expedited Hearing filed by the employee, Mark Welch, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is the compensability of Mr. Welch's right shoulder injury and his entitlement to medical benefits. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Welch is likely to establish at a hearing on the merits he suffered an injury arising primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court finds Mr. Welch is entitled to the requested medical benefits.[1]

### History of Claim

Mr. Welch is a fifty-three-year-old resident of Giles County, Tennessee. He testified he worked as a truck driver for Frito-Lay for twenty-two days when he suffered a work injury to his right shoulder on April 28, 2015. He also testified he never had any prior problems with his right shoulder. In addition, he passed numerous DOT physicals.

On April 28, 2015, while Mr. Welch was unloading boxes from a trailer, a box fell from the top of the stack. He caught the box with his right hand over his head and pushed it off to one side. While doing this, another box fell and struck the first box, jerking his arm down, and causing him to drop both boxes. He felt a sharp pain in his shoulder and

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

saw a knot in his bicep area. Mr. Welch reported the injury to his supervisors, and Frito-Lay provided on-site treatment with the plant nurse for several weeks. It subsequently provided a medical panel from which Mr. Welch selected Dr. Derek Riley. (Ex. 6.)

Dr. Riley first saw Mr. Welch on May 20, 2015, for complaints of right bicep pain. Mr. Welch reported a box falling and pulling his arm on April 28, 2015. His pain was mainly at the right elbow. Dr. Riley noted a possible partial biceps rupture and ordered an MRI. Mr. Welch returned on June 8, 2015, stating he had severe pain with flexion. The pain was worse at his elbow, but he felt it extended up his arm. The MRI showed "distal biceps edema but intact." Dr. Riley diagnosed biceps tendon strain. (Ex. 4.)

On June 29, 2015, Mr. Welch returned to Dr. Riley, reporting that his elbow had improved, but his shoulder had worsened. Dr. Riley ordered an MRI of the shoulder, which showed a rotator cuff tear and a long head biceps rupture. Dr. Riley discussed surgery with Mr. Welch on July 20, 2015, and recommended surgical repair on August 12, 2015. He noted:

> It is unlikely that a[n] intact RTC without underlying pathology would tear from what was reported to me on paper as "lifting a 5-7 pound box." He describes verbally the event as being from catching a falling box, which would increase the force across his shoulder. He does describe being symptom free before this event and symptomatic beginning with the event. I am unable to say with certainty that the event in question caused > 51% of his pathology, however I cannot say that it absolutely did not. It may be of benefit for him to get a second opinion on this matter.

Dr. Riley also noted Frito-Lay informed Mr. Welch it would not pay for any shoulder procedure "as he had underlying pathology prior to his injury." *Id.*

Mr. Welch testified that, because Frito-Lay was denying his medical treatment, he went to see Dr. William Ledbetter on September 22, 2015. Dr. Ledbetter's records show he did not treat Mr. Welch on that date because he needed to confirm whether the workers' compensation carrier would cover his treatment. Mr. Welch returned on October 2, 2015, with complaints of right shoulder pain. Dr. Ledbetter noted:

> Injured on the job April 28, 2015, approximately 5 months ago. Seen by an orthopaedic surgeon. He initially had an MRI scan of his right elbow. This demonstrated an injury to the biceps tendon. Due to persistent problems which then became more significant about the shoulder, he then had an MRI scan of his right shoulder, which demonstrated rotator cuff tear. This has been denied by Workmen's Comp. He has now been let go by the company. Previously was on light duty. Underwent a course of physical therapy. No other specific treatment that he described. He reports no major

problems with his right shoulder prior to his injury.

Dr. Ledbetter diagnosed a complete tear of the right rotator cuff. He told Mr. Welch he no long performs surgery and recommended a consultation with an orthopedic surgeon. (Ex. 3.)

Mr. Welch returned to Dr. Ledbetter on November 3, 2015. Dr. Ledbetter recorded a detailed history of Mr. Welch's condition and treatment, including a description of the April 28, 2015 accident. After examining Mr. Welch and reviewing his imaging results, Dr. Ledbetter stated: "It is my opinion that there is greater than 50% likelihood that his rotator cuff tear and rupture long head biceps tendon occurred as a result of his on-the-job injury. I recommend surgical repair." Dr. Ledbetter reiterated this opinion in his office note of December 28, 2015. *Id.*

In response to a request from Frito-Lay's attorney, Dr. Riley signed an undated letter stating: "The biceps tendon and the rotator cuff are intricately related. The injuries likely have the same underlying cause but I am unsure if >51% of the pathology was from this specific incident. I think it would be worthwhile for your claimant to seek a second opinion." (Ex. 5.)

Mr. Welch filed a Petition for Benefit Determination seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Welch filed a Request for Expedited Hearing, and this Court heard the matter on March 3, 2015.

At the Expedited Hearing, Mr. Welch asserted he is entitled to medical treatment for a rotator cuff tear arising primarily out of and in the course and scope of his employment. He acknowledged he selected Dr. Riley from a panel offered by Frito-Lay, but he disputed Frito-Lay's interpretation of Dr. Riley's conclusions. Mr. Welch contended Dr. Riley, when asked about causation, was unable say whether or not Mr. Welch's work caused his torn rotator cuff or biceps tendon rupture. In other words, the authorized treating physician (ATP) in this matter has not given any causation opinion at all. In the absence of any such opinion, Mr. Welch argued Dr. Ledbetter's opinion establishes the required causal link. Consequently, he requested an order compelling Frito-Lay to authorize the recommended surgery. In the alternative, Mr. Welch requested an order for a second opinion with an authorized physician, as recommended by Dr. Riley.

Frito-Lay countered that Mr. Welch is not entitled to any workers' compensation benefits because he failed to present evidence his injury arose primarily out of and in the course and scope of his employment. It argued there are two causation opinions in this case and, pursuant to Tennessee Code Annotated section 50-6-102(14)(E) (2015), Dr. Riley's opinion is presumed to be correct. Frito-Lay characterized Dr. Riley's opinion as

3

his conclusion that catching a box of potato chips was unlikely to be the cause of Mr. Welch's injuries. Frito-Lay also contended Dr. Ledbetter gave a summary opinion without any explanation, which is insufficient to overcome the presumption of correctness attached to Dr. Ledbetter's opinion.

## Findings of Fact and Conclusions of Law

Because this case is in a posture of an Expedited Hearing, Mr. Welch need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015). In analyzing whether he has met his burden, the Court cannot construe the law remedially or liberally in his favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Welch nor Frito-Lay. *See* Tenn. Code Ann. § 50-6-116 (2015).

During the hearing, the parties stipulated to notice and the date of injury. With the exception of a dispute over the weight of the boxes involved,[2] Mr. Welch's description of the accident was unrebutted. Thus, the primary issue is whether Mr. Welch's injury is compensable.

To prove a compensable injury, Mr. Welch must show that his alleged injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14) (2015). To do so, he must show his injury was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D) (2015).

Frito-Lay is correct that, because Mr. Welch selected Dr. Riley from a panel of physicians, Tennessee Code Annotated section 50-6-102(14)(E) (2015) establishes a rebuttable presumption of correctness for any causation opinion given by Dr. Riley. Frito-Lay contends Dr. Riley "concluded it is unlikely that Mr. Welch tore his rotator cuff and ruptured his bicep tendon while catching a box of potato chips." The Court finds, however, that Dr. Riley has not given a causation opinion in this matter. Rather, he

---

[2] Mr. Welch testified each of the boxes weighed five to seven pounds. Frito-Lay introduced the affidavit of Jarrius Salter, who stated the boxes weighed 3.4 pounds each.

stated, "I am unable to say with certainty that the event in question caused > 51% of his pathology, however I cannot say that it absolutely did not." He later said, "I am unsure if >51% of the pathology was from this specific incident. I think it would be worthwhile for your claimant to seek a second opinion." The simplest and most straightforward reading of these statements together shows that Dr. Riley was unable or unwilling to give a clear opinion regarding the cause of Mr. Welch's injury.

Even if the Court credited Dr. Riley's statements as a causation opinion, those statements would be legally insufficient because they fail to utilize the correct legal standard for causation. As noted above, Tennessee Code Annotated section 50-6-102(14)(C) (2015) requires an employee seeking benefits to prove, "to a reasonable degree of medical certainty that [incident] contributed *more than fifty percent (50%)* in causing the . . . disablement or need for medical treatment, considering all causes." (emphasis added) Dr. Riley's "opinion," on the other hand, questioned whether *more than 51 percent* of Mr. Welch's pathology came from his work accident.[3] To the extent Dr. Riley gave an opinion, it was based on an incorrect legal standard. Therefore, the Court does not afford it any weight.

Much like Dr. Riley, Dr. Ledbetter did not specifically utilize the phraseology of the causation definition in the statute, but his record differs from Dr. Riley's statements in two important respects. First, unlike Dr. Riley, Dr. Ledbetter clearly gave his opinion as to the cause of Mr. Welch's injuries, stating, "there is greater than 50% likelihood that [Mr. Welch's] rotator cuff tear and rupture long head biceps tendon occurred as a result of his on-the-job injury." Second, a close reading of this statement shows that it satisfies the applicable legal standard, even though it does not specifically cite the language of the statute.

The statute requires physicians to give their opinion based upon a reasonable degree of medical certainty. "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015). Dr. Ledbetter's "greater than 50% likelihood" meets this requirement, as it is simply another way of expressing "more likely than not."

What Dr. Ledbetter felt "more likely than not" is that Mr. Welch's condition "occurred as a result of his on-the-job injury." It is not determinative that the doctor did not couch this opinion in terms of "arose primarily out of and in the course and scope of his employment," as the wording of his statement indicates his belief the on-the-job injury was, not just the primary cause, but the sole cause of Mr. Welch's shoulder and arm condition.

---

[3] The Court recognizes this is a slender distinction, but the statute is quite specific that the legal standard is more than *fifty* percent. The one percent difference is not immaterial.

Frito-Lay presented evidence that the boxes involved in Mr. Welch's accident weighed less than four pounds each, rather than the five to seven pounds alleged by Mr. Welch. Although not specifically argued, the implication appears to be Frito-Lay's belief that these lightweight boxes could not be the cause of Mr. Welch's injuries. Any such conclusion would constitute a medical opinion, and would be a matter for the doctors to address. The Workers' Compensation Law does not allow the Court to substitute its medical opinion, or that of Frito-Lay, for the professional opinions of trained medical professionals.

Frito-Lay also contended the Court should not afford Dr. Ledbetter's opinion any weight. It argues he summarily gave his causation opinion without any explanation. The Court finds this argument unpersuasive. Dr. Ledbetter saw Mr. Welch multiple times, took a relatively detailed history, and reviewed Mr. Welch's imaging studies and Dr. Riley's treatment notes. Dr. Ledbetter then issued his causation opinion after noting Mr. Welch reported no injury or significant problems with his right shoulder before the workplace accident. There is no indication Dr. Ledbetter was unaware of any relevant history or imaging studies. The Court finds no reason to exclude his opinion as unreliable.

As noted above, the only medical causation opinion in the record is that of Dr. Ledbetter. In the absence of any actual medical opinion to the contrary, the Court finds Mr. Welch appears likely to prevail at a hearing on the merits. Therefore, as a matter of law, Mr. Welch has come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits. His request for medical benefits is granted.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Welch's injuries shall be paid and Frito-Lay or its workers' compensation carrier shall provide Mr. Welch with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2015), to include any surgical repair recommended by Dr. Riley, who remains the authorized treating physician. Medical bills shall be furnished to Frito-Lay or its workers' compensation carrier by Mr. Welch or the medical providers.

2. This matter is set for an initial (scheduling) hearing on May 5, 2016, at 9:00 a.m.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the**

6

**Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 14th day of March, 2016.**

_____
**Judge Dale Tipps
Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An initial (scheduling) hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be

7

made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service.  In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee.  The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter.  The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable.  **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof.  A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement.  All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Mark Welch
2. Affidavit of Jarrius Salter
3. Records of Dr. William Ledbetter
4. Records of Dr. Derek Riley
5. Letter from Dr. Riley to Frito-Lay's attorney
6. Bureau forms.
7. Photographs of shipping boxes

Technical record:[4]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 14th day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Eric Hennessee, Esq. | | | X | Eric.hennessee@mitchellattorneys.com |
| John Lewis, Esq. | | | X | john@johnlewisattorney.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**